UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEITH JORDAN,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-05-0024-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DIRECTING ENTRY OF<br>JUDGMENT FOR DEFENDANT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 9, 13) submitted for disposition without oral argument on January 30, 2006. Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, born October 27, 1959, was 44-years-old at the time of the second administrative hearing. (Tr. at 424.) He filed an application for Social Security disability benefits on September 6, 2000, alleging disability as of March 18, 1999, due to cervical and lumbar impairments. (Tr. at 107.) Plaintiff had a high-school

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

education and past relevant work as a heavy equipment rental clerk, landscaper/groundskeeper, truck driver and mechanic. (Tr. at 424.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held in 2001 before Administrative Law Judge Richard Hines (ALJ). The ALJ denied benefits; review was denied by the Appeals Council. An appeal was filed in the United States District Court for the Eastern District of Washington; pursuant to the parties' stipulation, the cause was remanded for further administrative proceedings. (Tr. at 437-438.) A second administrative hearing was held in 2004 before ALJ Hines. Benefits were denied; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

In 2004, the ALJ concluded Plaintiff was insured for disability benefits through December 31, 1999, and had not engaged in substantial gainful activity. Plaintiff suffered from severe cervical and lumbar impairments, but they were not found to meet the Listings. (Tr. at 433.) The ALJ rejected Plaintiff's testimony as not fully credible. The ALJ concluded Plaintiff retained the residual capacity to perform a specific range of light work and was not precluded from performing past work as a heavy equipment rental clerk. Thus, the ALJ found Plaintiff was not disabled. (Tr. at 434.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards.

Plaintiff contends the ALJ improperly relied on the opinion of the testifying physician, Dr. Glen A. Almquist, M.D., and improperly rejected the findings of chiropractor Dr. Gary Rutledge who treated Plaintiff from March through August 1999 shortly after the motor vehicle accident. Moreover, Plaintiff argues Dr. Rutledge's findings were consistent with those of examining physicians Drs. Laohaprasit and Oh. Plaintiff also asserts the ALJ improperly rejected the findings of examining physician, Dr. James Lamberton, D.O., who examined Plaintiff on September 14, 1999, January 25, 2000, and May 23, 2000. Finally, Plaintiff contends the ALJ improperly rejected the claimant's testimony as not fully credible. If that testimony were credited, a vocational expert testified Plaintiff would be disabled.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 3

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**RELIANCE ON CONSULTING PHYSICIAN**

Plaintiff contends the ALJ erred when he relied on the opinion of consultant Dr. Almquist, rejecting the functional limitations noted by chiropractor, Dr. Rutledge who treated Plaintiff on 27 occasions following his accident and surgeon, Dr. Lamberton, who concluded Plaintiff was unable to work because of his need to sit, stand and lie down during the day to relieve pain.  Defendant responds the ALJ correctly relied on the testimony of Dr. Almquist

because it was consistent with other evidence in the record.

1. <u>Dr. Glen A. Almquist, M.D.</u>

Dr. Almquist, a board certified orthopedic surgeon (Tr. at 40), testified Plaintiff suffered from two diagnoses, the first being post operative surgical spine fusion at C3-4, and C6-7 with degenerative arthritis mild to moderate at C4-5 and C5-6. (Tr. at 42.) The second diagnosis included mild degenerative arthritis of the lumbosacral spine without radiculopathy. Dr. Almquist then noted the objective findings as to the cervical condition other than the degenerative arthritis of the intervening disc spaces between the fusion, did not show any radiculopathy of the upper extremities or any severe changes. (Tr. at 42.) Dr. Almquist also noted an excessive amount of chiropractic treatments (more than 105) and massage, was contraindicated in light of the prior two fusions and neck pain. (Tr. at 44.) Nonetheless, Dr. Almquist concluded Plaintiff was capable of performing light work with no limitations in pushing, pulling or fine manipulation. He would be limited to occasional bending, stooping, reaching overhead, and moving machinery, and no crawling or unprotected heights.

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an

examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Almquist's opinion is consistent with other evidence in the record. Objective tests following the motor vehicle accident in March 1999 did not disclose any change in the cervical spine. (Tr. at 157, 165, 166, 167, 325.) In March 2000, an x-ray report stated there was no evidence of specific nerve root or spinal cord compression. (Tr. at 290.) In May 2000, J. A. Heusner, M.D., noted Plaintiff did not want to participate in a program that would set limits on his activities and that he had good muscle mass and tone. (Tr. at 292, 294.) Although Dr. Lamberton recommended full disability, he noted no objective findings of loss of reflexes,

atrophy or weakness and that symptoms were more subjective than objective. (Tr. at 329, 375.) Agency consultants limited Plaintiff to light work. (Tr. at 317, 319.) Finally, there is no evidence the functional limitations corroborated by objective findings in 2003 relate back to the period prior to the date of last insured, December 31, 1999. (Tr. at 462.) Thus, the ALJ did not err when he relied on the opinion of the consulting physician.

2. <u>Dr. Rutledge and Other Chiropractic Opinions</u>[1]

The court has reviewed the ALJ's decision and, although there is reference to some chiropractic findings, there is no review or analysis of Dr. Rutledge's findings. Defendant contends Dr. Rutledge's findings must be accorded the same weight as other evidence provided by a lay source. Defendant argues Dr. Rutledge's functional limitations were contradicted by Drs. Oh,[2] Laohaprasit[3]

---

[1] Almost all of Plaintiff's post-accident treatment prior to the date of last insured was provided by chiropractic doctors.

[2] On May 12, 1999, Dr. Oh examined Plaintiff for headache associated with neck pain. Plaintiff's range of motion was quite limited; Dr. Oh diagnosed cervical and lumbar sprain with right posterior lateral disc protrusion, which did not match complaints of numbness and parasthesia into the left upper extremity. He prescribed a back brace and anti-inflammatories with a gradual return to work and assumption of regular duties in six to eight weeks. (Tr. at 172-174.)

[3] On April 23, 1999, Dr. Laohaprasit referred Plaintiff to Dr. Oh for conservative treatment after a cervical and lumbar MRI did not indicate need for surgery to correct disc herniation or nerve

and Almquist.

A chiropractor is not an acceptable medical source and any opinion as to a medical diagnosis is not entitled to significant weight. 20 C.F.R. § 404.1513; *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996). A chiropractor, however, may offer evidence of functional limitations; if an ALJ chooses to reject such evidence, specific reasons must be provided. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, Dr. Rutledge provided chiropractic services immediately after the accident on March 19, 1999, until Plaintiff moved to Eastern Washington in August 1999. Dr. Rutledge referred his patient to chiropractor Lauren McElheran for an evaluation prior to treatment. She noted Plaintiff had returned to work and maintained an active lifestyle after his two prior cervical surgeries and was not under medical care prior to the motor vehicle accident in March 1999. (Tr. at 158.) During an examination that month, Dr. McElheran noted Plaintiff had an antalgic gait, was in acute distress, had muscle spasm and loss of equilibrium. (Tr. at 159-160.) She recommended two weeks of passive therapies and anti-inflammatories, and if no neurological signs became apparent, more active measures should follow. (Tr. at 162.) She concluded that treatment would be a minimum of four months to one year until maximum medical improvement was achieved. (Tr. at 163.)

Plaintiff attended chiropractic sessions with Dr. Rutledge an average of three times per week until re-examined by Dr. McElheran at Dr. Rutledge's request on May 24, 1999. (Tr. at 217-246.) Plaintiff was noted by Dr. Rutledge to be in an acute condition

---

compression. (Tr. at 164.)

through March, April and May 1999 with some improvement noted in late May. (Tr. at 220-246.) On May 24, 1999, Dr. McElheran examined Plaintiff a second time. She was able to reproduce headache pain and muscle spasm, left arm symptoms of numbness, tingling, and pain, and low back pain. (Tr. at 177.) She noted Plaintiff was making slow but satisfactory progress and encouraged him to increase activity. Selective injections at L5-S1 were recommended to reduce low back pain. (Tr. at 179.) It also was noted that the neurological symptoms in Plaintiff's left upper extremity be watched carefully and if no improvement occurred, referred to Dr. Laohaprasit for evaluation and treatment.

Treatments with Dr. Rutledge in June and July were less frequent due to Plaintiff's move from the area. (Tr. at 217-219.) On July 22, 1999, in response to an inquiry from an insurance company, Dr. Rutledge concluded Plaintiff suffered from chronic, acute cervical, thoracic and lumbar spinal sprain/strain injuries with associated severe neck, back and head pain, and pain and numbness radiating into the left upper extremity causing restricted motion of his neck and back, with muscle swelling and spasms bilaterally. (Tr. at 197.) On August 30, 1999, Dr. Rutledge opined Plaintiff was unable to work and that his care had been transferred to Dr. Tietsort in Republic, Washington. (Tr. at 215.) Dr. Rutledge did not provide an opinion as to the length of Plaintiff's disability; as of that date, Plaintiff had been disabled for about five and a half months, short of the one-year duration requirement. Additionally, evidence as to total functional impairment may be rejected in light of contradictory medical findings. See *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ properly

discounted lay testimony that conflicted with available medical evidence); *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (ALJ may resolve conflict between experts so long as there is "more than one rational interpretation of the evidence"). Any failure to address Dr. Rutledge's limited, conclusory opinion was harmless error. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (whether findings of fact are supported by substantial evidence or the law was correctly applied by the ALJ are questions subject to the harmless error standard).

An independent medical examination performed by chiropractor Robert Welborn, D.C., on September 24, 1999, concluded Plaintiff's condition was not fixed and stable. (Tr. at 253.)  Dr. Welborn found loss of grip and limited Plaintiff to lifting not more than 25 pounds, sitting and standing for only one hour with no bending activities.  Based on those limitations, Dr. Welborn concluded Plaintiff was disabled.  Facet injections were suggested if confirmed by an orthopedist. (Tr. at 254.)  Plaintiff's prognosis was guarded; additional MRI's were suggested. (Tr. at 255.)  The ALJ rejected this opinion, noting it was not found to be supported by the weight of the evidence; specifically, no clinical findings were reported that could be construed as inconsistent with a capacity to perform full-time work at the reduced light level. (Tr. at 426.)  Moreover, the ALJ noted a chiropractor is not an acceptable medical source and his findings were inconsistent with the medical record. (Tr. at 427.)  These reasons are specific and supported by the evidence.

3.   Dr. Lamberton

Dr. Almquist rejected Dr. Lamberton's opinion that Plaintiff

would need to lie down several times daily based on a lack of objective findings. (Tr. at 44.) He also rejected a conclusion Plaintiff had limitations of his right upper extremity based on findings of excellent rotation, no atrophy in the upper extremities, symmetrical strength and equal reflexes. (Tr. at 47.)

With respect to Dr. Lamberton's opinion, the ALJ noted:

> Dr. Lamberton's opinion that the claimant requires an opportunity to lie down during an eight-hour day has been considered herein, but is not found to be supported by the weight of the evidence. It is arguably [sic] whether Dr. Lamberton actually constitutes a "treating medical source," as defined in 20 C.F.R. 404.1527, as he has seen the claimant on only two occasions upon consultation referrals from his chiropractor. At the very least, Dr. Lamberton's opinions of record are not entitled to controlling weight that might otherwise be accorded to a long-term medical provider whose treating relationship and familiarity enable him to offer a longitudinal assessment of impairment severity supported by concomitant clinical findings of abnormality. Dr. Lamberton failed to identify any specific clinical findings in support of his opinion that the claimant must lie down during an eight-hour period; moreover, he acknowledged that the claimant had demonstrated significant medical improvement on May 23, 2000, compared to September 14, 1999; yet, he had not placed any restrictions upon his capacity for work activity on the earlier date. Dr. Lamberton's opinion is found to be significantly outweighed by the clinical findings and opinions of other treating and examining sources of record including Dr. Laohaprasit, Dr. Oh, and Dr. Heusner; furthermore, it was the testimony of the medical expert, Dr. Almquist, that Dr. Lamberton's opinion was unsupported by persuasive clinical evidence. It is not reasonable to accept that an individual who medically requires an opportunity to lie down throughout the day due to a Musculoskeletal impairment would not have also required intensive outpatient treatment, emergency room intervention, hospitalization, regular pain medication, and conservative care with measures such as a TENS unit or epidural injections. In summary, Dr. Lamberton's opinions of May 23, 2000 and September 26, 2000, are not found to be entitled to any significant evidentiary weight in this adjudication.

(Tr. at 428.) In light of the lack of objective findings, conservative treatment modalities, and failure to consult an acceptable medical source, the ALJ's reasons for rejecting Dr.

Lamberton's limitation as to the need to lie down are specific and supported by the record. There was no error.

**CREDIBILITY**

Plaintiff contends the ALJ erred when he rejected his testimony without "clear and convincing" reasons. Plaintiff testified he needed to lie down several hours during the day to control pain.

In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id*. at 1281-82. If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id*. at 1284. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If

a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same).

In his opinion, the ALJ commented with respect to Plaintiff's testimony:

> In arriving at the conclusion that the claimant was not precluded from performing a wide range of light work for any continuous 12-month period that commenced prior the expiration of his insured status on December 31, 1999, his subjective allegations of record regarding his symptoms and limitations have been evaluated pursuant to the criteria of Social Security Ruling 96-7p. In questionnaires completed by the claimant at the time of his application for benefits, he alleged disability due to chronic cervical and lumbar pain. At the hearing, the claimant reiterated those allegations and described left shoulder and arm pain, symptoms that have not been consistently reported to medical sources of record. The claimant alleged an inability to walk more than one-quarter mile, a statement that would appear contrary to Dr. Lamberton's observation on September 14, 1999, that he was "active" with exercise and walking. The claimant alleged an inability to sit or stand for prolonged periods, look down, or engage in activity such as writing or gripping small objects without difficulty, but his assertions are not found to be supported by clinical findings of abnormality that could reasonably be expected to produce such symptomatology. The claimant acknowledged that he is involved in pending litigation, a situation that necessarily raises the possibility of a motivation for secondary compensatory gain, and the record suggests that he has sought medical opinions/care from several physicians in order to obtain favorable documentation for his disability claim and lawsuit. The record documents that the claimant contacted treating sources at the Republic Medical Clinic on September 27, 2000 requesting a retroactive statement supportive of disability commencing prior to December 31, 1999; however, this request was denied and he was advised that such a statement could only be provided by a physician who had actually treated him during the period prior that date. No treating or examining physician, other than Dr. Lamberton, has categorized the claimant as disabled during the period relevant to this adjudication; furthermore, it was the testimony of the medical expert of record, as incorporated herein, that the claimant retains the

> capacity to perform a wide range of light work activity. The claimant's treating and examining physicians did not document clinical findings of abnormality prior to December 31, 1999, or contemporaneous reports of subjective symptomatology that corroborate the degree of limitation alleged in this adjudication; moreover, it was Dr. Lamberton's opinion on March 6, 2001, that the claimant's subjective reports exceeded his objective findings. The claimant's allegation of disability under the Social Security Act is further contradicted by the extremely infrequent nature of his outpatient treatment prior to December 31, 1999, and by the fact that he had not required emergency room intervention, other than on March 18, 1999, or hospitalization for the treatment of acute exacerbations of his musculoskeletal impairments. The claimant did not undergo intensive treatment with pain medication prior to December 31, 1999, and the record reflects that he has rejected treatment such as Demerol injections and an EMG for diagnostic evaluation, behavior that does not enhance the credibility of his allegations of chronic pain. The claimant's activities of daily living during the relevant adjudicatory period were not consistent with disability under the Social Security Act; specifically, the record documents that he performed some self-employment work activity prior to the expiration of his insured status on December 31, 1999, and that he was engaging in basic household chores and exercising.

(Tr. at 431.) Plaintiff does not assert these findings are unsupported by the record and this court's prior review of the medical record corroborates the ALJ's findings. Additionally, these reasons are clear and convincing and support rejection of Plaintiff's testimony as not credible.

Plaintiff also contends the ALJ neglected to make specific findings with respect his need to lie down every day two to three time for 45 minutes to relieve pain. However, there is no credible medical evidence to support a need to lie down, as noted in the ALJ's opinion. Thus, there was no error. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec.**

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 14

**13)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3.   The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be **CLOSED** and judgment entered for Defendant.

DATED February 3, 2006.


                              S/ CYNTHIA IMBROGNO
                           UNITED STATES MAGISTRATE JUDGE